IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Maryland)

RUSSELL BYRNE                          *

     *Plaintiff*                           *

v.                                     *

OPEYEMI ODUMESI, et. al.               *

     *Defendants*                          *          Civil Action No.:  1:25-cv-03296-EA

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

NOW COMES Plaintiff, Russell Byrne ("Plaintiff"), by and through undersigned counsel, and submits this Opposition to Defendants' Motion to Dismiss (ECF 10). Plaintiff maintains that his Complaint plausibly alleges that Defendant Correctional Officer Opeyemi Odumesi observed an unprovoked assault, watched Plaintiff lose consciousness, and failed to issue commands, summon assistance, or otherwise take protective action, before turning away and leaving the area. Compl. ¶¶ 29–51. The Complaint further alleges that Defendant Baltimore County's longstanding policies and customs, including chronic understaffing and inadequate training and supervision, predictably impaired detainee supervision and response to inmate violence, and were a moving force behind the constitutional violations alleged. Compl. ¶¶ 76–83. Because the Complaint pleads plausible claims under both federal and state law, Defendants' Motion to Dismiss should be denied in its entirety.

Plaintiff Byrnes states further in support of the instant opposition:

**Table of Contents**
I.     INTRODUCTION ................................................................................... 2
II.    STANDARD OF REVIEW .................................................................... 3
III.   FACTUAL AVERMENTS WITHIN PLAINTIFF'S COMPLAINT ................ 4
IV.   ARGUMENT .......................................................................................... 7

A.  Subject Matter Jurisdiction is Proper ................................................................... 7
B.  Count II Plausibly Alleges a Fourteenth Amendment Failure to Protect Claim ........... 7
C.  Defendant is not Entitled to Qualified Immunity ................................................ 9
D.  Count IV – Monell Claim ............................................................................. 12
E.  Maryland Declaration of Rights Claim in Count III ........................................... 15
F.  Gross Negligence Claim – Count I .................................................................. 16
V.  CONCLUSION ............................................................................................. 20

## I.  INTRODUCTION

This case arises from a violent, unprovoked assault on a pretrial detainee that occurred in full view of a correctional officer who did nothing to stop it.

On October 8, 2022, Plaintiff was housed as a pretrial detainee in Dorm 2V of the Baltimore County Detention Center ("BCDC"). Another detainee, William Lee, initiated an unprovoked physical attack on Plaintiff in the dormitory dayroom. Defendant Correctional Officer Opeyemi Odumesi was present in the dayroom, had an unobstructed view of the assault, and was positioned close enough to intervene, issue commands, or summon assistance. Rather than take reasonable protective measures, Defendant Odumesi watched Plaintiff be thrown to the ground where he was rendered unconscious and repeatedly punched and kicked in the head and face. He then turned away and walked off without taking any protective action. Plaintiff suffered serious injuries, including facial fractures and traumatic monocular blindness. The assault and Officer Odumesi's inaction were captured on BCDC's own CCTV system.

Plaintiff's Complaint includes claims of: (1) gross negligence under Maryland law (Count I), (2) a Fourteenth Amendment failure-to-protect claim under 42 U.S.C. § 1983 (Count II), (3) violations of the Maryland Declaration of Rights (Count III), and (4) municipal liability under Monell against Baltimore County for policies and customs, including chronic understaffing and related failures of training, supervision, and policy, that amounted to deliberate indifference to

detainee safety and were a moving force behind the constitutional violations (Count IV). Compl. ¶¶ 76–83.

Defendants' Motion seeks dismissal by recharacterizing Plaintiff's allegations, drawing inferences against Plaintiff, and importing facts outside the pleadings (including speculative assertions about what occurred after the critical period of inaction). Rule 12 does not permit the approach proposed by Defendants.

## II.    STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accordingly, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Industries*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(A claim is plausible when the pleaded facts allow the Court to draw the reasonable inference that the defendant is liable.) The Court may not weigh evidence, resolve factual disputes, or credit

defendants' competing narratives. *Twombly*, 550 U.S. at 555. Dismissal is improper where the complaint's allegations, taken as true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.    FACTUAL AVERMENTS WITHIN PLAINTIFF'S COMPLAINT

Plaintiff's custodial status and relationship to the named Defendants are established within the Complaint. Plaintiff Byrne has averred that, at the time of the subject occurrence, he was being held within the BCDC as a "pretrial detainee." Compl. ¶¶ 12–15, 63. Plaintiff Byrne has further averred that Defendant Baltimore County operated the BCDC and was responsible for staffing, training, supervision, policies, and customs affecting the safety of detainees housed within the BCDC. Compl. ¶¶ 5, 77–83. Plaintiff Byrne states that the BCDC (acting for Defendant Baltimore County) distributed written policies to staff, including policies requiring close supervision of inmates and requiring officers to make reasonable efforts to bring volatile situations under control using sound correctional practice and judgment to protect staff, visitors, and inmates. Compl. ¶¶ 22–24. Defendant Odumesi is identified within the Complaint as a Correctional Officer, employed by Defendant Baltimore County, working at the BCDC. Compl. ¶¶ 4, 67. Plaintiff Byrne asserted that correctional staff at BCDC, including Defendant Odumesi, were responsible for supervising detainees, maintaining security and order, and ensuring safety by enforcing rules and directing inmate movement at all times relevant to the Complaint. Compl. ¶ 21.

According to Plaintiff Byrne, Defendant Baltimore County operated the BCDC in an unsafe manner. The Complaint includes allegations that, at the time of Plaintiff's detention, the BCDC was "alarmingly understaffed" to such an extent that the resulting conditions created unreasonable and excessive risks to detainee safety. Compl. ¶¶ 16–20. Plaintiff asserts that staffing vacancies had reached an "alarming level," leaving insufficient officers to provide appropriate

security and safety for both detainees housed within the facility and staff working at the facility. Compl. ¶ 17. Plaintiff contends further that Defendant Baltimore County was on notice of these dangerous conditions from multiple sources including (1) public protests outside BCDC (June 26, 2022) wherein protestors demanded that Defendant Baltimore County address worsening conditions and violence in the BCDC; and (2) reports to the County Council detailing staffing shortfalls, a 37% vacancy rate at the BCDC, and mandatory overtime to cover vacant shifts at the BCDC. Compl. ¶¶ 18–19. Baltimore County "made no effort [,however,] to address, remedy and/or correct" the dangerously low staffing that threatened detainee safety. Compl. ¶ 19. Understaffing at the BCDC was not an isolated, temporary shortfall, but rather a persistent condition and a policy/custom of Baltimore County that predictably impaired supervision, timely response, and detainee protection. Compl. ¶¶ 20, 77–83.

On October 8, 2022, Plaintiff Byrne fell victim to the persistent dangerous conditions within the BCDC. That day, he was housed in Dorm 2V, which included a dayroom surrounded by individual cells that housed approximately thirty-three inmates. Compl. ¶¶ 25–27. Plaintiff Byrne was in the central dayroom when another inmate, William Lee, approached him and commenced an unprovoked assault. Compl. ¶¶ 27–31. Plaintiff alleges that he attempted to retreat but did not otherwise engage Lee. Compl. ¶¶ 32–33. Plaintiff Byrne was eventually thrown to the ground and, once on the ground, had no ability to retreat or protect himself. Compl. ¶ 34. Plaintiff Byrne's vulnerability was compounded when he was knocked unconscious. Compl. ¶ 38. While Plaintiff Byrne lay unconscious and prone, Lee continued punching and kicking Plaintiff about the head and face. Compl. ¶¶ 39–40, 44.

This assault occurred within view and within reach of Defendant Odumesi, who was in the dayroom distributing meals. Compl. ¶¶ 28–31. Defendant Odumesi observed the assault and was

looking directly at the attack as Plaintiff was taken to the ground. Compl. ¶¶ 35–36. Although Officer Odumesi had the opportunity and ability to render protection, he did not undertake any effort to abate the assault. Compl. ¶¶ 31, 35–40. According to Plaintiff Byrne, despite plainly observing that Plaintiff was being beaten and recognizing the possibility of serious injury, Defendant Odumesi made no effort to intervene and/or physically separate Lee from Plaintiff, stop the assault, or render aid after Plaintiff Byrne was unconscious. Compl. ¶¶ 36–40. Plaintiff Byrne further alleges that Officer Odumesi did not issue commands in an attempt to stop the assault, summon assistance, and/or call for help. Compl. ¶¶ 40, 50.

The attack was recorded by CCTV cameras. Compl. ¶¶ 48–50. Plaintiff alleges that CCTV recordings show Lee commencing the unprovoked assault, throwing Plaintiff to the ground, and then continuing to strike Plaintiff while he lay unconscious on the ground. Compl. ¶ 49. Plaintiff further alleges the CCTV recordings show that, approximately thirty seconds after the assault commenced, Officer Odumesi can be observed looking directly at the assault and then turning away and walking off without intervening. Compl. ¶ 50. Plaintiff's Complain includes still shots obtained from CCTV surveillance equipment which demonstrate the location of the assault, as well as the relative position and orientation of Defendant Odumesi at the time of the happening. Plaintiff Byrne alleges that because the assault was allowed to continue unabated after he was knocked unconscious, he suffered severe, painful, and permanent injuries, including serious facial fractures, and that he has experienced and will continue to experience physical pain, mental anguish, and economic losses. Compl. ¶¶ 44–47, 61, 75.

## IV.    ARGUMENT

### A.  Subject Matter Jurisdiction is Proper

As a starting point, Plaintiff maintains that Defendants incorrectly argue that this Honorable Court lacks subject-matter jurisdiction. Counts II and IV of the Complaint arise under 42 U.S.C. § 1983 and therefore fall squarely within this Court's federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343. *See Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (federal jurisdiction exists unless the federal claim is "wholly insubstantial and frivolous"); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511–16 (2006) (distinguishing jurisdiction from merits). Moreover, whether Plaintiff has plausibly alleged Monell liability is a merits question governed by Rule 12(b)(6), not a jurisdictional defect. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (no heightened pleading standard for § 1983 municipal-liability claims). Simply stated, this Honorable Court enjoys subject matter jurisdiction over these claims and may properly exercise its pendent jurisdiction over Plaintiff's Maryland State law claims.

### B.  Count II Plausibly Alleges a Fourteenth Amendment Failure to Protect Claim

Because Plaintiff Byrne was a pretrial detainee at the time of the underlying assault, the Due Process Clause of the Fourteenth Amendment governs his right to be protected from violence and to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); Compl. ¶¶ 63–65. It has long been clearly established that correctional officers may not stand by and allow inmates to be violently assaulted by other inmates when reasonable protective measures are available. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Raynor v. Pugh*, 817 F.3d 123, 131–33 (4th Cir. 2016).

Historically, failure-to-protect claims required a plaintiff to plead exposure to a substantial risk of serious harm and a culpable failure to act. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994);

*see also Brown v. Harris*, 240 F.3d 383, 388-90 (4th Cir. 2001) (applying *Farmer* to a pretrial detainee's failure to protect claim.) "For a claim based on a failure to prevent harm, a person [would necessarily] show that he is being detained, or incarcerated 'under conditions posing a substantial risk of serious harm.'" *See Brown*, 240 F.3d at 389 (quoting *Farmer*, 511 U.S. at 834). Objectively, the plaintiff would be required to "establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk of either injury. *Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014); *see also Helling v. McKinney*, 509 U.S. 25, 36 (1993) (For purposes of the objective inquiry, courts "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk."). A plaintiff was also required to establish, subjectively, that the prison official involved had "a sufficiently culpable state of mind," which, in this context, "is one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). This subjective inquiry required evidence that the official had actual knowledge of an excessive risk to the prisoner's safety; i.e. that "the official [was] both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he [] also dr[ew] the inference." *Id* at 837.

For pretrial detainees, however, the Fourth Circuit holding in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), abrogated this prior precedent and now permits detainees to state deliberate-indifference claims under a purely objective standard. *Short v. Hartman*, 87 F.4th 593, 611–12 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 2631 (2024). Under *Short*'s objective standard, a detainee plausibly pleads deliberate indifference by alleging: (1) an objectively serious condition posing a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk; (3) the defendant knew or should have

known that the failure to act posed an unjustifiably high risk of harm; and (4) the detainee was harmed. *Id.* Plaintiff Byrne easily meets that controlling standard in the instant case.

An ongoing beating of an unconscious detainee presents an obvious and extreme risk of serious harm. Plaintiff's Complaint sufficiently alleges an unprovoked, ongoing assault culminating in Plaintiff being thrown to the floor, rendered unconscious, and repeatedly kicked and punched in the head and face. Compl. ¶¶ 34, 38–40, 44–49. Plaintiff further alleges that Officer Odumesi observed the assault, observed Plaintiff lose consciousness, and then walked away without issuing commands, calling for assistance, or intervening while Lee continued striking him in the head and face. Compl. ¶¶ 31, 35–40, 50. Plaintiff does not allege a split-second misjudgment or a reasonable tactical decision. He alleges complete inaction in the face of an ongoing beating of an unconscious detainee. No reasonable officer could believe that such conduct was lawful. At minimum, whether Defendant Officer Odumesi's conduct was objectively reasonable is a fact-bound inquiry that cannot be resolved on a motion to dismiss.

Even under the now-superseded subjective *Farmer* standard, Plaintiff's allegations suffice. Direct observation of an obvious and escalating assault (Compl. ¶¶ 31, 35–36, 50) permits a reasonable inference of actual knowledge. *See Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (subjective knowledge can be established by circumstantial evidence where the risk is so obvious that it must have been known). The risk here, severe injury proximately resulting from a beating that continued and escalated after Plaintiff Byrne was rendered unconsciousness, was obvious.

## C. Defendant is not Entitled to Qualified Immunity

Qualified immunity does not protect officers who violate clearly established constitutional rights; it is inapplicable to government officials, in their individual capacities, when "'(1) they

violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'" *Barrett v. PAE Government Services*, 975 F.3d 416, 428 (4th Cir. 2020) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 589 (2018)); see also *Taylor v. Riojas*, 592 U.S. 7, 141 S. Ct. 52, 53 (2020); *Halcomb v. Ravenell*, 992 F.3d 316, 319 (4th Cir. 2021); *Humbert v. Mayor and City Council of Baltimore*, 866 F.3d 546, 555 (4th Cir. 2017), *cert. denied*, 584 U.S. 1013, 138 S. Ct. 2602 (2018); *Osborne v. Georgiades*, 679 F. App'x 234, 237 (4th Cir. 2017); *Scinto v. Stansberry*, 841 F.3d 219, 235 (4th Cir. 2016); *Hunter v. Town of Mocksville*, 789 F.3d 389, 401 (4th Cir. 2015). Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. Rather, the doctrine protects officials "'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citation omitted); *accord Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012).

The Fourth Circuit has explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." *Scinto*, 841 F.3d at 235 (citations omitted); *see also Cannon v. Village of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018).  Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional [or statutory] right," *Saucier v. Katz*, 533 U.S. 194, 201 (2001); and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer

10

that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)).  The "two inquiries . . . may be assessed in either sequence."  *Merchant*, 677 F.3d at 661-62.

Defendants focus their qualified-immunity discussion on general statements about lack of specificity in terms of the established rights at issue in this instant case. (ECF Memorandum of Law in Support of Motion to Dismiss at pg. 5-7) The "clearly established" inquiry does not, however, require a prior decision in a case with identical facts. It turns on the existence of precedent that places the unlawfulness of the conduct beyond debate. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The Supreme Court has long held that prison and jail officials have a constitutional obligation to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833–34. The Fourth Circuit has repeatedly applied that principle in failure-to-protect cases. *See, e.g., Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723–24 (4th Cir. 2010); *Makdessi*, 789 F.3d at 132–35; *Raynor v. Pugh*, 817 F.3d 123, 131–33 (4th Cir. 2016); *Cox v. Quinn*, 828 F.3d 227, 236–41 (4th Cir. 2016); *Danser v. Stansberry*, 772 F.3d 340, 346–48 (4th Cir. 2014). In such cases, qualified immunity turns on what the officer perceived, what options were available, how quickly events unfolded, what assistance could be summoned, what policies required, and what the officer did or did not do. *See Cox*, 828 F.3d at 236–41 (Where an officer disregards obvious risks and fails to take reasonable measures to prevent or stop inmate violence, qualified immunity is not automatic and liability may attach.); *See also Danser*, 772 F.3d at 346–48.

Again, Plaintiff Byrne does not allege that Defendant Odumesi misjudged the level of threat, chose among reasonable tactical options, or momentarily delayed action to secure safety.

Rather, Plaintiff Byrne alleges that Defendant Odumesi watched an unprovoked assault unfold, watched Plaintiff become unconscious, and then walked away without issuing commands, summoning assistance, or intervening. Compl. ¶ 50. The Complaint plausibly alleges facts which support an inference that Defendant Odumesi's conduct was unreasonable, including reference to portions of the incident captured on CCTV. Compl. ¶¶ 48–50.

Plaintiff's Complaint alleges that Defendant Odumesi did not attempt even minimally burdensome protective measures such as commands, alarms, or radio calls while witnessing an ongoing beating. Compl. ¶¶ 40, 50. The § 1983 claim therefore should not be dismissed. *See Brown*, 612 F.3d at 723–24 (*quoting Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002) (reversing dismissal where an inmate alleged officers knew he faced a serious danger and "could avert the danger easily yet they fail[ed] to do so.")). Plaintiff's allegations here, especially the existence of CCTV footage of the incident, make factual development through discovery appropriate.

In apparent recognition that Plaintiff has properly plead the cause of action, Defendants urge this Honorable Court to infer facts outside the pleadings (e.g., that BCDC "eventually responded" to the assault). On a Rule 12(b)(6) motion the Court may not consider such assertions absent conversion to summary judgment. Defendants' attempt to defeat Count II by positing alternative facts and inferences is not a basis for a dispositive ruling at this stage of the litigation.

### D.  Count IV – Monell Claim

Plaintiff alleges that Defendant Baltimore County maintained longstanding policies and customs, including chronic understaffing, inadequate training and supervision, and failure to implement policies responsive to known staffing crises, that created an unreasonable risk of inmate-on-inmate violence. *See City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989); *Spell v. McDaniel*, 824 F.2d 1380, 1386–91 (4th Cir. 1987) (A plaintiff may plead an actionable policy or

12

custom by alleging: (1) an express policy; (2) a widespread practice or custom that is so permanent and well settled as to constitute a custom with the force of law; or (3) a failure to train or supervise that reflects deliberate indifference.) By way of Count IV of the Complaint, Plaintiff asserts that this inaction was the moving force behind the constitutional violation that he suffered and therefore are actionable under 42 U.S.C. § 1983. ¶¶ 76–83; *see Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 (1978) (Municipal liability arises when a municipal policy or custom causes a constitutional injury)

At the pleading stage, plaintiffs are not required to identify every internal policy detail or to prove pattern evidence; those facts are typically in the municipality's possession. The Fourth Circuit has cautioned against imposing heightened pleading requirements for *Monell* claims and has recognized that discovery is often necessary. *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 402–04 (4th Cir. 2014). Plaintiff has sufficiently alleged that Baltimore County "developed and maintained policies or customs exhibiting deliberate indifference" to detainee safety by chronically understaffing its detention facilities, failing to adequately train and supervise correctional officers, and failing to maintain adequate policies and procedures to ensure health and safety. Compl. ¶¶ 77–81.

The Complaint details widespread understaffing, a reported 37% vacancy rate, mandatory overtime, public protests, and County policymakers' knowledge of and failure to address these conditions. These allegations support an appropriate inference that policymakers knew of an excessive risk to detainee safety and disregarded it. Plaintiff Byrne further pleads multiple policy failures (staffing, training, supervision, and procedures). Compl. ¶¶ 79–81. These allegations go well beyond a single-incident theory and plausibly plead deliberate indifference. *Owens v. Balt.*

*City State's Att'ys Office*, 767 F.3d 379, 402–04 (4th Cir. 2014)., 767 F.3d 379, 402–04 (4th Cir. 2014).

Indeed, Plaintiff Byrne alleges that Officer Odumesi's inadequate response was undertaken pursuant to County policy/custom and was a "direct result" of understaffing. Compl. ¶ 82. Plaintiff alleges that the County's policies and customs demonstrate deliberate indifference and were the proximate cause of the constitutional violations. Compl. ¶ 83.

The potential existence of facially appropriate policies does not negate a plausible claim that the Defendant Baltimore County's customs (e.g., chronic understaffing) and failures (training/supervision) rendered those policies ineffective in practice, or that the County failed to implement policies adequate for known conditions. Stated alternatively, a municipality also may be liable even where an employee's conduct violates written policy when the municipality's customs, staffing decisions, training failures, or supervisory failures make constitutional violations predictable or tolerated in practice. Whether Defendant Baltimore County's policies and customs were the moving force is a merits question for discovery and (if necessary) trial, not dismissal.

There is no impermissible "tension" between alleging Officer Odumesi's unconstitutional inaction and alleging municipal liability. (i.e. incongruity in Plaintiff's allegation, by noting that Plaintiff alleges both (i) Officer Odumesi's wanton inaction and (ii) County policies/customs causing the violation.) Rule 8(d) expressly permits alternative and overlapping theories of liability.

Plaintiff's failure to train and failure to supervise allegations are independently plausible. A municipality's failure to train may constitute an actionable policy where the failure reflects deliberate indifference to constitutional rights. *City of Canton*, 489 U.S. at 388–90. Here, Plaintiff alleges policymakers were on notice of dangerously low staffing and increased violence, and yet failed to implement additional training, supervision, and procedures to protect detainees. Compl.

14

¶¶ 16–20, 79–81. Defendants argue that Plaintiff must plead additional details about policymaking choices, training curricula, incident reports, or similar internal information. But those details are within the County's exclusive control. *Owens* teaches that Monell claims should not be dismissed simply because a plaintiff cannot plead internal details without discovery. *Owens*, 767 F.3d at 402–04. Plaintiff has pleaded more than enough to proceed to discovery focused on staffing, supervision, training, and response policies.

Plaintiff has adequately pleaded his Monell claim. Because qualified immunity is an individual-capacity defense, it is not available to Defendant Baltimore County which is sued in Count IV under Monell. *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980) (municipalities have no qualified immunity under § 1983).

### E. Maryland Declaration of Rights Claim in Count III

By way of Count III of the Complaint, Plaintiff Byrne alleges that Defendant Odumesi's conduct also deprived him of rights secured by the Maryland Declaration of Rights. Compl. ¶ 72; see also Compl. ¶¶ 71–75. Maryland courts construe Article 24 of the Maryland Declaration of Rights (due process) in pari materia with the Fourteenth Amendment's Due Process Clause. *Okwa v. Harper*, 360 Md. 161, 200–01, 757 A.2d 118 (2000). Because Plaintiff plausibly pleads a federal due process violation, he likewise pleads a state constitutional violation.

Plaintiff has sufficiently pleaded that Defendants' actions and omissions proximately caused severe and permanent injuries. Compl. ¶¶ 72–75. Whether Officer Odumesi had a reasonable opportunity to act, what measures were available, and what injuries resulted from the alleged inaction are factual questions for discovery and for the jury. Moreover, common-law governmental immunity does not bar the Maryland constitutional tort claims brought directly under the Maryland Declaration of Rights. Maryland's appellate courts have repeatedly recognized

damages actions for violations of the Declaration of Rights and have held that governmental immunity does not shield local governments and their officers from liability for Maryland constitutional torts. *Clea v. Mayor & City Council of Baltimore*, 312 Md. 662, 680–82, 541 A.2d 1303 (1988*); DiPino v. Davis*, 354 Md. 18, 51–52, 729 A.2d 354 (1999); *Okwa*, 360 Md. at 201–02, 757.

### F.  Gross Negligence Claim – Count I

Defendants argue that the Complaint "frames allegations of negligence as gross negligence." Mot. at pg. 2-4. This characterization ignores the pleaded facts. Plaintiff does not allege a momentary delay, a miscommunication, or a split-second error in a dangerous encounter. Rather, Plaintiff alleges that Correctional Officer Odumesi watched an unprovoked assault unfold, watched Plaintiff be thrown to the ground and rendered unconscious, and then walked away without intervening or taking protective measure while the assailant continued to punch and kick Plaintiff's head and face. Compl. ¶¶ 34–40, 50.

Under Maryland state law, gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," and as conduct that "evinces a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 443 Md. 680, 708–09, 118 A.3d 829 (2015) (collecting and discussing definitions). Gross negligence is "a higher degree of negligence representing an extreme departure from the ordinary standard of care." *Id.* Whether conduct rises to gross negligence is generally a jury question and may be resolved as a matter of law only when reasonable minds could not differ. *Barbre v. Pope*, 402 Md. 157, 187, 935 A.2d 699 (2007). Courts in Maryland are particularly reluctant to dispose of

gross-negligence claims on the pleadings where the allegations describe deliberate inaction in the face of an obvious risk of serious harm.

Plaintiff pleads that Defendant Odumesi was within view of the assault from its inception. Compl. ¶¶ 28–31. Plaintiff pleads that the assault escalated, that Plaintiff was thrown to the ground, and that Plaintiff was rendered unconscious. Compl. ¶¶ 34, 38. Plaintiff pleads that the officer observed these events, had an unobstructed view, and did nothing—no commands, no effort to separate the inmates, and no call for assistance—while the attacker continued punching and kicking Plaintiff's head and face. Compl. ¶¶ 39–40, 50. Plaintiff also pleads that Defendant Odumesi knew Plaintiff could not defend himself or retreat once unconscious, and that the officer nevertheless purposefully refrained from intervening. Compl. ¶¶ 38, 58–60. These allegations easily cross the plausibility threshold for gross negligence. A reasonable juror could conclude that an officer who watches an unconscious detainee being kicked and punched in the head and does nothing exhibits "utter indifference" to that unconscious detainee's life and safety.

Maryland case law directly permits claims against correction officers who disregard obvious risks in custodial settings. In *Cooper v. Rodriguez*, Maryland's highest court reinstated a jury's gross-negligence finding against a correctional officer who failed to secure inmates on a transport bus, resulting in an inmate's death. *Cooper*, 443 Md. at 733. The Court emphasized that gross negligence turns on the totality of circumstances and is typically for the jury. *Id*. at 708–09, 733. While Cooper involved transport, the principle is the same: correctional officers have manifest duties to protect those in custody from obvious and extreme risks, and wanton disregard of those duties may be found grossly negligent. Plaintiff's allegations here are, if anything, more

direct: he alleges the officer watched an ongoing assault and did nothing while the assailant continued striking an unconscious detainee. Compl. ¶¶ 38–40, 50.

As with the other counts, Defendants' reliance on Plaintiff's Monell allegations about understaffing (e.g., Compl. ¶ 82) does not undermine gross negligence. Understaffing may be relevant to why adequate staffing should have existed and to the County's liability; it does not excuse an officer's complete failure to take any protective step. And, critically, the Court may not accept Defendants' alternative narrative that the officer's inaction was merely an "improper response" rather than the wanton abandonment that has alleged by Plaintiff Byrne. The Complaint expressly alleges that Officer Odumesi acted with wanton and reckless disregard for Plaintiff's safety. Compl. ¶¶ 56–60.

Defendants argue further that, assuming Defendant Odumesi was grossly negligent, he was not the proximate cause Plaintiff's injuries because the injuries resulted from "a deliberate attack by other inmates." Mot. at 4. This argument is predicated on a misunderstanding of the duty at issue. Where a defendant has a duty to protect against a known or obvious risk of third-party violence, the occurrence of that violence is the very harm the duty is meant to prevent. It cannot automatically be treated as a superseding cause as a matter of law. Accordingly, within the Complaint, Plaintiff has expressly alleged that Defendant Odumesi's inaction allowed the beating to continue unabated after Plaintiff was knocked to the ground and rendered unconscious. Compl. ¶¶ 34, 38–40, 44. Plaintiff pleads further that "but for" the officer's wanton and reckless conduct, Plaintiff would have been able to retreat and protect himself from serious injury. Compl. ¶ 60. In sum, Plaintiff has adequately plead that Defendant Odumesi's gross negligence proximately resulted in his severe and permanent injuries. Compl. ¶¶ 56, 61. These allegations are sufficient under Rule 8.

Whether Defendant Odumesi's failure to act was a substantial factor in producing Plaintiff's injuries (including the severity of the injuries inflicted while Plaintiff lay unconscious) is a classic question for the jury. Defendants' causation argument depends on factual assumptions and inferences that must be drawn in Plaintiff's favor at this stage.

Defendants' complaint that Plaintiff has not plead the factual circumstances of the eventual "conclusion of the incident" or BCDC's "eventual response" also has no bearing on the issues before this Honorable Court.  Mot. at 4. Rule 8 does not require Plaintiff to plead every moment of the incident, especially where (as alleged) the key period of unconstitutional and grossly negligent inaction is captured on video and will be developed in discovery. Plaintiff has pleaded the critical facts: the unprovoked assault; the officer's observation; Plaintiff's unconsciousness; the continued beating; the absence of commands or assistance; and the resulting injuries. Compl. ¶¶ 30–40, 44–50.

There is no common-law public official immunity in connection with the Gross Negligence claims. Mot. at 4. The doctrine shields certain public officials from liability for ordinary negligence when performing discretionary acts within the scope of their authority and without malice. *Cooper*, 443 Md. at 713–14. It does not apply to gross negligence. *Id*. at 723. Maryland's highest court has been explicit: "gross negligence is an exception to common law public official immunity." *Cooper*, 443 Md. at 723. Accordingly, where a complaint plausibly alleges gross negligence, public official immunity cannot support dismissal.

Here, Plaintiff pleads that Officer Odumesi purposefully failed to perform his manifest duty to protect detainees from serious harm, and did so with wanton and reckless disregard of Plaintiff's safety. Compl. ¶¶ 52–61. Plaintiff pleads that the officer watched the assault, watched Plaintiff become unconscious, and then walked away without issuing commands, calling for

assistance, or intervening. Compl. ¶¶ 38–40, 50. Those allegations, when accepted as true,

preclude immunity at the pleading stage.

      Even apart from the gross-negligence exception, the immunity analysis turns on fact

questions: whether the act/omission was discretionary or ministerial in the circumstances; what

options were available; what training and protocols required; and whether the officer acted with

malice or gross negligence. Defendants seek to resolve those questions by recharacterizing

Plaintiff's allegations as "error" or "judgment" rooted in staffing constraints. But the Court must

credit the pleaded facts, and those facts plausibly support gross negligence. Dismissal is

improper.

## V.    CONCLUSION

      For the above stated reasons, Plaintiff respectfully request that this Honorable Court deny

Defendants' Motion to Dismiss and grant such further and additional relief as it deems to be just

and appropriate.


                                   Respectfully submitted,

                                   IAMELE & IAMELE, LLP


                                    /s/
                          _____
                          Anton L. Iamele
                          201 North Charles Street, Suite 1802
                          Baltimore, Maryland 21201
                          aiamele@iamelelaw.com
                          Telephone: 410-779-6160
                          Facsimile: 410-779-6161

## HEARING REQUEST

Plaintiff requests that a hearing be held concerning Defendant's Motion to Dismiss and Plaintiffs Opposition to the same.

_____/s/_____
Anton L. Iamele

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this **7th** day of **January 2026**, a copy of the foregoing Response in Opposition to Defendants' Motion to Dismiss was sent by this Court's electronic delivery system and U.S. postage prepaid mail to the following:

Edmund Fiske, Esquire
Baltimore County Office of Law
400 Washington Avenue
Towson, Maryland 21204

_____/s/_____
Anton L. Iamele